BARTOLA COLLAZO, DOLORES, EUFEMIA y MARCOLINA HERRERA, demandantes y apelantes, *v.* EUDOSIA MOURIÑO ALVARADO y el menor PEDRO JUAN HERRERA Y MOURIÑO, demandados y apelados.

Núm. 6769.—*Sometido:* Marzo 29, 1937. *Resuelto:* Junio 11, 1937.

*Ramón G. Goyco* y *Angel Fiol Negrón*, abogados de las apelantes; *Leopoldo Tormes García*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Las demandantes como presuntas herederas de Pedro Juan Herrera Collazo, iniciaron este recurso para cancelar determinado asiento en el registro civil y para dejar sin efecto cierta declaración de herederos hecha a favor del demandado Pedro Juan Herrera Mouriño.

Herrera Collazo se casó dos veces. Se divorció de su primera esposa en junio 29, 1923, y se volvió a casar el 27 de agosto del mismo año. En enero, 1924, Herrera Collazo inscribió en el registro civil el nacimiento del niño Pedro Juan Herrera Mouriño, como hijo legítimo suyo y de su segunda esposa Eudosia Mouriño. Se hacía constar que el niño nació el 25 de noviembre de 1923.

Herrera Collazo falleció el 24 de octubre de 1930. Su viuda Eudosia Mouriño obtuvo una declaratoria de herederos fechada el 22 de noviembre de 1930, en la que se declaró a Pedro Juan Herrera Mouriño único y universal heredero. Las demandantes instaron su demanda original en octubre, 1931. En una tercera demanda enmendada deducida el 3 de octubre de 1932, las demandantes alegaron que la madre de Pedro Juan Herrera Mouriño lo era Manuela Sánchez Echevarría, señora casada, y que al tiempo de la concepción Herrera Collazo era el esposo de Patria Montalvo, su primera mujer. Los demandados alegaron falta de hechos suficientes para determinar una causa de acción, impedimento (*estoppel*) y prescripción. El juez de distrito declaró sin lu-

gar la demanda porque en su opinión el recurso estaba prescrito y la demanda dejaba de aducir hechos suficientes para constituir una causa de acción. Los artículos 113 a 117 inclusive del Código Civil (edición de 1930) leen así:

"Artículo 113.—Son hijos legítimos los nacidos después de los ciento ochenta días siguientes al de la celebración del matrimonio y antes de los trescientos días siguientes a su disolución.

"Contra esta legitimidad no se admitirá otra prueba que la imposibilidad física del marido para tener acceso con su mujer en los primeros ciento veinte días de los trescientos que hubiesen precedido al nacimiento del hijo.

"Artículo 114.—Igualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnare su legitimidad.

"Artículo 115.—Podrá impugnarse la legitimidad del hijo nacido después de los trescientos días de la disolución del matrimonio; pero el hijo y su madre tendrán también derecho para justificar en este caso la paternidad del marido.

"Artículo 116.—La legitimidad puede ser impugnada solamente por el marido o sus legítimos herederos. Estos sólo podrán impugnar la legitimidad del hijo en los casos siguientes:

"1. Si el marido hubiese fallecido antes de transcurrir el plazo señalado para deducir su acción en juicio.

"2. Si muriese después de presentada la demanda sin haber desistido de ella.

"3. Si el hijo nació después de la muerte del marido.

"Artículo 117.—La acción para impugnar la legitimidad del hijo deberá ejercitarse dentro de los tres meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento."

Los hijos a que se hace referencia en el artículo 113 son los hijos de la esposa especificados en esa sección, y no los de otra mujer. 1 Manresa 509, 530 (5ª. edición); Sánchez Román, Tomo 5 (2), (2a. edición), 966, 969 (nota), 976.

Si el recurso concedido al marido (y en ciertas circunstancias específicas a sus herederos) por el artículo 116 puede ser iniciado tan sólo con el fin de establecer el hecho de que

el marido no era el padre de los hijos de su esposa, no puede invocarse esa sección como autoridad para el presente litigio. Si el artículo 116 es suficientemente lato para sostener un recurso interpuesto por los herederos de un cónyuge finado para cancelar la inscripción del nacimiento de un niño como hijo legítimo de tal esposo y su consorte, por ser tal niño de hecho el hijo de otra mujer casada, entonces la presente demanda deja de aducir hechos suficientes para determinar una causa de acción. El marido no había "fallecido antes de transcurrir el plazo señalado para deducir su acción en juicio." No había "muerto después de presentada la demanda sin haber desistido de ella." El hijo no había "nacido después de la muerte del marido."

Sin embargo, en realidad, las apelantes no se fundan en el artículo 116 como base de su recurso. Invocan el aforismo de que "doquiera existe un daño existe siempre un remedio." En apoyo de esta teoría citan también los casos de *García* v. *García,* 18 D.P.R. 963 y *Alcaide* v. *Morales,* 28 D.P.R. 278. Un examen de la opinión emitida en *García* v. *García* bastará para distinguir ese caso del presente. El primer párrafo del sumario en el caso de *Alcaide* v. *Morales* lee así:

"Una persona tiene el derecho de pedir la nulidad del reconocimiento de un supuesto hijo natural cuando dicho acto es consecuencia de error, dolo, intimidación, violencia u otra causa semejante; y ni la doctrina de *'estoppel in pais,'* ni la de *'estoppel by laches'* impiden el ejercicio de tal acción, que es prescriptible a los quince años. La prueba que se aporte en esos casos debe ser de tal manera robusta y convincente que al anular el reconocimiento hecho, la corte quede plenamente convencida de que ésa y no otra es la resolución que impone la justicia."

El caso de *Sucesión Cruet* v. *Mandes,* 35 D.P.R. 827, aun cuando no ha sido citado por ninguna de las partes es algo más aplicable a los hechos aquí envueltos, aunque la opinión de la mayoría no resolvió una de las cuestiones discutidas por el Juez Asociado Sr. Wolf en su opinión concurrente y por el

Juez Asociado Sr. Aldrey en su opinión disidente. De la opinión de la mayoría tomamos el siguiente extracto:

". . . La demanda en este caso fué radicada el 19 de diciembre de 1924. En ella se alega que el demandado, Isabelino Mandes, compareció personalmente el día 14 de marzo de 1914 en el Registro Civil de Guayama e hizo inscribir el nacimiento de una niña llamada Iris como hija legítima de él y de su esposa Victoria Cruet Colón, y como que había nacido el día 17 de febrero del mismo año; que al tiempo de la inscripción el mencionado Mandes manifestó e hizo que se hiciera constar, entre otras cosas, que los abuelos maternos de la niña eran José Cruet y Ramona Colón; que Mandes hizo esto a sabiendas de que la mencionada niña no era hija legítima de él y de su esposa Victoria Cruet, como se hizo constar; y que José Cruet y Ramona Colón no eran los abuelos maternos, ya que Mandes y su esposa Victoria Cruet no tenían ningún hijo que viviera en aquel entonces. Los demandantes también alegan por información y creencia que la niña Iris era hija natural de una tal Antonia Rivera y de un individuo llamado Juan Montero; y que había nacido en una casa o ranchón de madera propiedad de don Bautista Soto, sito en el barrio de Guamaní, en fecha anterior a la mencionada en el registro civil; que la niña Iris fué recogida por doña Victoria Cruet esposa de Mandes, en momentos en que la madre de la niña, que se había vuelto loca, trataba de ahogarla en el Río Guamaní; que doña Victoria Cruet murió en Guayama el día 8 de agosto de 1920, sin haber dejado descendientes, sucediéndole sus padres, José Cruet y Ramona Colón; que la verdadera madre de Iris murió en Guayama el día 15 de mayo de 1913; que José Cruet también falleció en Guayama el 14 de junio de 1922, dejando bienes y bajo testamento, en el cual instituyó a los demandantes y a la mencionada Victoria Cruet como sus únicos y universales herederos; y que teniendo los demandantes que dividir la herencia de su expresado causante don José Cruet y Arroyo, no lo han podido verificar porque para ello se hace necesario ventilar este caso ante la corte para que se declare inexistente el estado de hija legítima de la niña Iris como descendiente de los esposos Isabelino Mandes y Victoria Cruet, por el motivo de que es incierto el hecho de la inscripción de nacimiento como hija legítima de los cónyuges Mandes-Cruet y sin causa legal que lo justifique; y subsistiendo tal inscripción ello daría derecho a la niña Iris en la herencia de su supuesto abuelo el fenecido don José Cruet y Arroyo, en representación de su supuesta legítima madre doña Victoria Cruet, fallecida también, y con la inscripción de referencia se perjudica el

derecho de la viuda doña Ramona Colón, madre legítima de doña Victoria Cruet, que es su heredera forzosa, como también el derecho de los demás legitimarios del causante José Cruet y Arroyo, según los hechos precedentemente alegados.''

El Juez Asociado Sr. Wolf en su opinión concurrente dijo:

''Igualmente baso mi opinión concurrente en otro punto, expuesto tan sólo parcialmente en la opinión principal. Estando vivo su supuesto padre y habiéndola inscrito como hija legítima, ninguno de los demandantes tenía interés alguno o capacidad para atacar el estado legal de Iris Mandes. En mi opinión, Mandes era el único ser viviente que tenía derecho a presentar tal acción. Los demandantes ante la ley no tenían nexo jurídico.''

Refiriéndose a este punto el Juez Asociado Sr. Aldrey, en su opinión disidente, expuso:

''Para concluir, réstanos decir que entre los demandantes y los demandados existe nexo jurídico, negado en el voto concurrente, porque si la niña Iris no es hija legítima de los esposos Mandes el figurar como tal produciría perjuicios a los herederos de don José Cruet Arroyo porque disminuiría el haber hereditario de ellos al tener que dar una cuota igual a la suya a dicha niña, y dondequiera que existe un perjuicio tiene que haber un remedio, como declaró este tribunal en el caso de *García* v. *García*, 18 D.P.R. 964, caso bastante análogo al presente pues en él un niño solicitaba que se anulase la inscripción de su nacimiento hecha en el registro civil como hijo natural de un hombre que no era su padre pero que lo reconoció como tal por afecto a él, y en el que también la corte de distrito estuvo bajo la idea de que no se podía atacar el reconocimiento de dicho menor como hijo del demandado.''

El Juez Aldrey en otra parte de su opinión disidente dijo:

''De la prueba documental resulta comprobada también la muerte de José Cruet Arroyo ocurrida el 15 de mayo de 1913; y del testamento de éste que los demandantes son sus herederos. La valoración dada por el Tesorero a los bienes dejados por José Cruet Arroyo asciende a $10,050 y como la mitad son gananciales de la viuda quedará un líquido de $5,025 divisibles entre sus seis hijos, y si Iris es

hija legítima de doña Victoria habría que dividir entre siete herederos y correspondería a cada uno $717, si no hay que hacer bajas en la herencia.''

En este caso las demandantes no alegan que Pedro Juan Herrera Collazo tuviera bienes al tiempo de su muerte. No alegan que Domingo Herrera, quien falleció después de muerto su hijo Pedro Juan Herrera Collazo dejara propiedades de clase alguna. Ni siquiera alegan que Bartola Collazo, la madre de Pedro Juan, tenga algunos bienes o es probable que adquiera bienes que las otras demandantes en este recurso podrían ser llamadas a poseer en común con el demandado Pedro Juan Collazo Mouriño, en caso de que la demandante Bartola Collazo muriera en vida de sus codemandantes. No alegan ningún interés pecuniario en la cancelación del asiento en el registro civil o al dejarse sin efecto la declaratoria de herederos.

Durante el curso del juicio el juez de distrito, con el consentimiento de ambas partes, se reservó su decisión sobre las cuestiones de derecho argumentadas y sometidas para aquel entonces y declaró sin lugar la demanda luego de celebrarse un juicio sobre los méritos, sin considerar la evidencia. Nada hay en la prueba de las demandantes que demuestre un interés pecuniario en su esfuerzo de privar al niño Pedro Juan Herrera y Mouriño de su estado civil presente de hijo legítimo y de estigmatizarle con el sello de bastardo adulterino. Aceptando para los fines de la argumentación que el Juez Asociado Sr. Aldrey estuvo en lo cierto en el caso de Mandes, los fundamentos que sirvieron de base a su opinión disidente no existen en el presente.

Cuando no existe un agravio por reparar, o la invasión de ningún derecho perteneciente a las demandantes, o el derecho a exigir el remedio solicitado, ni la máxima legal *ubi jus, ibi remedium* ni su equivalente en equidad, pueden ser fructuosamente invocados.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.